Good morning, Abby Wright on behalf of the United States. By statute, Mr. Schmidt was committed to the custody of the Bureau of Prisons upon his conviction. Mr. Schmidt remains in the custody of the Bureau of Prisons today. At no point has any court order- What kind of custody are you talking about? That seems to be an issue. We're talking about both legal and physical. Actual custody or legal custody? He's in both the legal and physical custody of the Bureau of Prisons. He is obviously physically at FCI Butner, but he's also in the legal custody. He was committed by virtue of 18 U.S.C. 3621 upon his conviction. There's never been a court order that has required the Bureau of Prisons to release Mr. Schmidt. I think Mr. Schmidt and Judge Boyle disagree at heart with how Judge Motz exercised his authority over the 2255 proceedings in his never ordered that Schmidt be released. He granted the writ? He granted the writ in September. He gave the government 30 additional days to tell him whether they were going to proceed with the prosecution of Mr. Schmidt. What did you tell the judge at the end of that period? We filed a motion for reconsideration of the granting of the writ, your honor. And then Judge Motz- And then what happened after that? So Judge Motz considered that motion until April of 2016, at which point he denied the reconsideration. The government then sought a stay of any order. And then in June- Did you get a stay? Well, so what happened was in June, nothing happened. No, did you get a stay? Eventually, in June. But you didn't get a stay until when? Until June, because Judge Motz didn't- nothing happened between April and June. And because of that, the government and Mr. Schmidt's counsel filed a letter with Judge Motz saying, you've not yet selected a remedy in this case. You've not yet ordered release. We think it's appropriate for you to order release and then immediately stay. Wasn't the stay request outside of the 14-day window for asking for a stay? It was, your honor, but only because there was nothing- whoop, I should call it that. There was nothing to stay at that point. So Judge Boyle believed that Judge Motz's September order required the release of Mr. Schmidt. It did not. So there was- What do you mean, you didn't get a stay? The great writ, when you grant the writ, you know, surrender the body and grant the writ. That's it. That is it. These are 2255 proceedings, your honor. And this Court's decision in Haddon, this Court explained that it's a two-step process. So- and that's under the statute as well. The first step is the Court considers, was the sentence or the conviction valid? And that's what happened in September. Judge Motz ruled that the conviction was not valid. When you read the text of 2255, it says, you know, there has been an infringement or whatever. The Court shall vacate and set aside the judgment. And then it says, shall discharge or resentencing or grant a new trial or correct the sentence. Well, those latter options weren't available to Judge Motz because he had ordered that the- he said that the prisoner here is actually innocent. Well, if someone's actually innocent, you can't resentence them or grant a new trial or correct the sentence. They're not- they don't deserve any sentence. He was- if they're actually innocent. And the only thing that seems to apply under the text of 2255 is that the individual would be discharged. Well, your honor, so Mr. Schmidt pled guilty to two charges, but there were additional charges that were dropped as part of the plea agreement. So what could have happened was the government could have decided to go forward with prosecuting Mr. Schmidt on those charges. What if they were keeping him in prison? I suppose the release would have occurred if you thought you had sufficient cause to proceed. You could have sought his detention again and started the process all over again. Well, that could have been one way that it played out. But what happened here, your honor, was that the government determined that it would not recharge- would not proceed because, of course, this conduct happened years and years ago. You never told Judge Motz that, though, did you? I think our motion for reconsideration was our implicit way of saying that, your honor. There's a lot of things happening implicitly in this case, and that's part of the problem. I think- I think Judge Boyle wanted to second-guess, as I said, what Judge Motz was doing here. Well, the second-guessing is pretty clear. As Judge Wilkinson laid out, it's right there. It's not second-guessing. Well, Judge Motz didn't think that, your honor. I mean, when we filed our letter in June, Judge Motz doesn't say, what are you talking about? He should have been released in October. He says you're- you know, he enters an order along the lines of our letter, which is that you never adopted- you never ordered that release. And so the Bureau of Prisons was never in a position to release Mr. Schmidt. There was no court order. The Bureau of Prisons would not release until there was a court order ordering it to do so. Judge Motz said in JA 27, he said- I mean, he says Schmidt is thus actually innocent of the crimes to which he pled guilty because his conduct was not in violation of United States law. I mean, and then Schmidt's own motion was to vacate the conviction and order the immediate release of the defendant. And then the order states, without elaboration, the motion is granted. So you just pick up all these clues that what Judge Motz meant to do was to grant the motion to vacate, find him actually innocent, as he says, and that leaves only under the statute. He can't do anything else at that point other than discharge. So as of September, he could have detained him pursuant to the government proceeding with the prosecution. That ultimately was not what the government determined to do. Now Judge Motz has the authority, of course, as he did in June, to order release and then stay that release. See, the thing that concerns me about this case is it seems to edge a little closer to the proposition that someone who is found actually innocent can still be found to be in the legal custody of the government. And that, you know, that's kind of, I have a problem with that. Well, I think I have a couple of responses. I mean, one analogy is there are a bunch of cases where people, where inmates had made this argument when they say we're convicted for escaping from prison, and they said, but I wasn't there lawfully. And courts have uniformly, obviously, rejected that. In addition, there are circumstances under 4246, which was enacted in 1948, so it's a very long-standing history, where you don't have to have a conviction for the federal government to civilly commit you. For example, if you are determined to be mentally incompetent to stand trial, or if all charges against you are dismissed based on your mental health. This is a civil commitment. This is a civil commitment process. That's right, Your Honor. But one of the checks, given that it's a civil commitment process, one of the checks on the civil commitment process is this notion of lawful custody. Well, I think... If you strip the civil commitment process of that protection, then you just begin to erode some very basic presumptions in... I guess I'd like to talk about this Court's decisions in Joshua and Savage, which talked about the legal versus physical custody. And I think there the question was whether another entity had, in fact, ultimate legal authority over the inmate. And in Joshua, this Court held that the military did, and in Savage held that the District of Columbia did not. But here, we know that he was committed to the custody of the Bureau of Prisons upon his conviction. That later, years later, that conviction is determined to be invalid. That, of course, is on appeal before this Court as well. We hope that that will be reversed ultimately. It is not the same thing as whether, on the day he was certified, the Bureau of Prisons was operating under lawful authority to be holding him. And I think they were here, because they were not in contempt of any court order. There was no court order requiring that they release Mr. Schmidt. So on the day that he was certified, the Bureau of Prisons had the legal authority to be detaining Mr. Schmidt. And that's what's required under the Act. And, of course, we're just asking that this Court remand to the District Court to hold the evidentiary hearing required under the Act. It hasn't happened yet. So the Court hasn't, Judge Boyle hasn't had the opportunity to determine whether Mr. Schmidt is a sexually dangerous person under the Act or not. Because the Act requires him to be lawfully in your custody. That's right. And the government's position is that he is lawful. I heard that, but your position, all due respect, is totally inconsistent with Judge Mott's order. He granted the writ. I mean, basically what you're saying, in many of these cases, you know, the government waits until the very end when somebody's spent time and haven't done very little to help them at all. And then you wait until it's time for them to leave. And then you file these, they should stay forever for the civil commitment. But here, even worse, the writ is granted and you do nothing. You knew you had, but you want the Court to save you. I think, Your Honor, with all due respect to Judge Mott, Judge Mott did not think his order ordered the release. It doesn't matter what he thinks. His order speaks for itself. Well, he's, I think he's in control and has the authority. No, he's not in control. No, no, no. That's why we're in a system of a rule of law, not of men and women. The Court spoke clearly that the writ was granted. And unlawful was no basis for the United States government to hold this person, period. And then out of respect for the government, okay, I'm going to give you 14 days to do something, if you would like, so that there will not be a gap. Out of respect, and out of somewhat disrespect, government did nothing. And then comes here a second judge saying, well, oh, no, we need to do this. But, you know, the law won't do for you what you won't do for yourself. Well, under Hilton v. Bronsko, we know that district court judges can grant full habeas relief and then stay the release of the prisoner. They certainly can. That is correct. Is there a stay here? There is a stay here from Judge Mott. No, no, was there a stay then in terms of that period of time? There was not a stay until June 2016. So, I don't know, I guess I would ask, Your Honors, if you think that, even under your view, that he's in custody, legal custody today, because there is a stay in place after. But Judge Mott didn't stay in his own order. He did stay in his own order, Your Honor, in June. When? So, in June 4th, I believe, we filed a letter in conjunction with Mr. Bronsko to ask for his release. We don't believe you've selected the remedy. We think, at this point, it is appropriate that you do so and that you stay that order. He enters that order. He granted that stay, I think, after this Court had acted to grant the stay, isn't that right? He did, yes. So, this Court. I suspect he was acting, I mean, he saw that we had already granted relief. It seems to be a ministerial act at that point. Well, I don't think so. I think, I mean, because this Court could have, of course, dissolved its stay at any point, and his stay is still, in effect, pending appeal of that decision, which is before this Court, as well, fully briefed, although argument date has not yet been set. So, my only point is that even if you think the government needed to seek a stay, and Judge Mott's needed to grant one, that has happened now. And, you know, if this Court believed that we needed to recertify him now, we could do that. It's our position that we don't need to, because there never was anything to seek a stay from. But my point to Chief Judge Gregory was simply that if you think there was some problem with the interim time, there has been a stay granted now by Judge Mott's, and we could recertify Mr. Schmidt at this juncture. The stay was granted after the 14-day period that the government had to apply for the stay. Well, it's our position, Your Honor, that there, as I sound like a beating dead horse, but that there was nothing to stay at that point because Judge Mott's had not taken the second step of determining whether or not, I mean, ordering the release. There was nothing to stay. The district court had entered an order granting the motion that the sentence be vacated and that the defendant be released. The order itself says, Your Honor, nothing about release, and says, I ask the government to advise me on or before October 14th as to whether it intends to proceed with the prosecution. So the order itself doesn't speak to release, and as I've said, Judge Mott's never says to the government at any other point, you know, I feel like you've been in contempt of my order this entire time. Why hasn't the Bureau of Prisons released Schmidt? When our motion for reconsideration was denied, then the government moved for a stay. That stay was ultimately granted in June. And so the question, I think, before this court is whether on the day of the certification, the Bureau of Prisons had the legal authority to be detaining Mr. Schmidt, and it did. And to note, too, that Mr. Schmidt's counsel didn't, also was under the impression that there was no release order, didn't move for immediate release until the motion for reconsideration was denied in April. I think if there are no further questions, I'll save my time for rebuttal. Thank you, Ms. Wright. Thank you. Mr. Tarleton. May it please the Court, my name is Raymond Tarleton, and I represent Richard Schmidt. The notion that any human being can be lawfully imprisoned for months and months without an intact conviction is simply anathema to our American system of justice. Yet it's what we have here, and Judge Boyle saw it, and he ordered that Mr. Schmidt's petition that the government filed to civilly commit him be dismissed because Mr. Schmidt was not in the lawful custody of the Bureau of Prisons. As required by this court in its Joshua opinion. Joshua stands for the proposition that lawful custody, that the cornerstone of it, is confinement pursuant to a conviction or legal process. And when Judge Motz in the District of Maryland vacated on actual innocence grounds all of Mr. Schmidt's convictions, that evaporated the legal basis to hold him, and it remained unstayed. And that's critically important in this case. Fourteen-day automatic stay expired as of September 25th of last year, and the BOP no longer had the authority to confine him. The government here advances one primary argument. Before you get to the government's argument, can I ask you why, if you thought that the September 11, 2015 order granted your client's immediate release, why you waited until April of 2016 to actually move for release? It seems like you, too, at least were a bit uncertain as to exactly what the status was of Mr. Schmidt. We understand that there's a certain appeal to zeroing in on the party's expectations about Judge Motz's order. And my client's Maryland lawyers, either diligence or lack thereof, in pursuing release. And I apologize if I attributed their actions to you. I only practice in North Carolina, Your Honor. Right. Go ahead. The lawfulness of custody in America has never turned on the detainee asking his jailer for release. And that is the— Normally a district court order will say what they mean when the writ is granted, and you would expect a direction to be appended to the order which wasn't here. They will say a motion is granted and the court hereby orders the defendant to be immediately released, or then they'll give the government the option of releasing the defendant or retrying the defendant. This is an awfully sparse order. And, you know, you can—it grants the motion that the defendant be released, but normally the district court would tell you where you go from here in his own words. That didn't happen here. So what are we to imply or what are we to infer from that? Your Honor, with all respect, the sparseness of the separate short order, and I think it's Joint Appendix 28 or—that shows, that conclusively shows the finality that took root. Under Rule 58 of civil procedure and going back to the Hughes v. Halifax school board case, a separate order with short or little explanation constitutes a final judgment that you tie in now to Appellate Rule 4 for purposes of calculating when the window to file an appeal takes place. That is the finality. That shows that Judge Montz knew he was granting the great writ. You look at that separate short order on his docket. It says, without any qualification or reservation, Mr. Schmidt's motion is granted. And you tie it back to, well, what did his motion request? One thing, immediate release, which makes perfect sense. His argument is actual innocence. That's the only remedy that can make sense. He also issued a separate memorandum and opinion. And the jurisprudence shows that the memorandum and opinion— Which he says he's factually innocent. That's correct. Actually innocent and— Factually innocent. That shows why he issued a separate short order that established, that was under the wall, a final judgment. And Andrews, the case cited by the government and ourselves, shows that finality in— Your view is that if he wanted to give the government the option of retrying him or resentencing him, that that was the option that should have been spelled out. Absolutely. And it just can't logically occur. And I think a useful—in other words, resentencing or retrial cannot logically occur as a remedy to actual innocence. Because under what I think is a useful analytical model, when you have the manner of prosecution— —within the 14-day period. But the point is the stay is in effect now. And how do you respond to that? Your Honor, we would say first the stay doesn't grant a new basis of lawful custody. What it's doing is it's preserving the status quo while this court resolves the appellate litigation. I heard counsel for the government say, well, if we win on the 2255 appeal that's also pending in this court, we'll just try to recertify him. Well, Your Honor, we'll get into some very interesting constitutional litigation. Do you agree with Judge Diaz's suggestion that the stay was sort of a ministerial act out of courtesy to this court? Out of—at minimum, I would call it a ministerial act. I would say that this court should absolutely disregard that June 4th letter that somehow became a order on June 7th for several reasons. First, that order was—or excuse me, that letter and order was issued well after Judge Boyle's ruling was on appeal to this court. And the—it was drafted on the government's letterhead, and it's calibrated to strike at the very heart of Judge Boyle's rulings. And it's completely at odds—the statements that we don't believe the hat and remedy has been given is completely at odds with all my clients. The stay was entered after Judge Boyle— Absolutely. It was entered after the appeal from Judge Boyle's final order. It was entered after this court's May 27th stay that forced us—I mean, as a matter of law, once this court stayed, Mr. Schmidt couldn't get out. And, in fact, Judge Motz on May 31st granted a stay or denied Mr. Schmidt's release after this court stayed his release without any real explanation. And so it was almost gratuitous that the government on its letterhead would send this order to Judge Motz that just happens to strike at the very heart of the issue on appeal, in this case, before Your Honors, and it should just be completely disregarded. But there is a—I mean, there is a principle that the effect of district court orders like granting the writ, even on an actual innocence basis, that things are held in place. Are they not pending an appeal? Yes, Your Honor, they're certainly held in place. And is the question of lawful custody—is the government's lawful custody not overthrown until this—unless this—until a direct appeal is concluded? Your Honor, our position is that— I'm saying for purposes of the Adams-Walsh Act, is lawful custody measured as of the time of the district court order? Or if the government seeks to appeal the district court order, is it measured as of the determination and conclusion of the direct appeal? It's measured as of the time that the action is commenced. So when the petition is filed in the district court, was there lawful custody in place? Which is, more fundamentally, was there actual federal jurisdiction in place at that time? At that time, there was no stay from any court. We're talking about— After the district court ruling, but maybe reinitiated after an appellate ruling that reverses the district court? If this court in the 2255 litigation out of Maryland reverses and remands saying that, no, he's not actually innocent— Where is that 22—where is the appeal of Judge Monson's order? It's set for oral argument in this court, I think, the week of December 8th. But our point is, at the time that the petition is filed, that's when custody has to exist. Because it's a more fundamental question under Article I— The appeal hasn't been concluded. That's correct. Why do you say that? What I'm saying is that when they file the petition, they have to have jurisdiction. They can't later regain it. They have to have custody as of the time of the filing of the petition. Exactly, Your Honor. Even if the appeal hasn't been concluded? That's correct, Your Honor, yes. And then what happens if the appeal reverses the order of the district court, which deprived the government of lawful custody? Then lawful custody is reestablished? It would be, and then they would move to recertify at that point. But the 2255 order has not been reversed. This is all going to be moot one way or another after the December proceedings? I have a matrix, Your Honor, I think, on various outcomes. Yes, this is procedurally a bit of a complicated problem. It would never, ever get passed. It would never be a schedule for moot court. Those moot court problems are so nice and smooth, and they don't ever have these procedural tangles. And then you get into real court and have something like this. It's an honor. It's my first law argument. Certainly, if we win the 4248 appeal and my colleague wins the 2255 appeal, he gets out. There's no jurisdiction, other subject to registration laws. Do we hold this case for the December argument? That would make sense, Your Honor, yes. But there are some interesting scenarios that could play out. If we were to lose this case but he was to win the 2255 case and conclusively establish that he's actually innocent and has not been in or ever been in lawful custody, then I think there would be a remand in this case for a constitutional question that really isn't before this court. Can the government have the civil commitment power under Article I to detain indefinitely someone who should never have been in federal prison? But that's not the issue here. The issue here is statutory jurisdiction. And this court in Haddon made it clear in the context of appellate litigation that federal jurisdiction is an inflexible and unyielding standard. You can't have a little bit of lawfulness of custody. You can't have a little bit of finality. It either is or it isn't. And here Judge Motz's separate short order showed that he knew he was executing final judgment and granting the writ in its purest, most common law form. And its purest, most common law form has always been immediate discharge of the prisoner. There's no authority the government has cited that the Haddon two-step process cannot happen in one order. And that's exactly what happened here. As to the government's arguments that maybe everybody was waiting in suspense to see what other remedy could apply, like maybe there was going to be a new trial, that's just illogical in this case. The Judge Motz's invitation or direction that the government informed them about its intentions to retry him, the answer to that lies in 18 U.S.C. 3296. It's a statute that within 60 days after a final judgment, and that's important, final judgment vacating a guilty plea, that's the time window in which the government must petition to reinstate, dismiss charges. The government never even acted on that direction from Judge Motz, but that language does not show that his order lacked finality. In fact, his separate short order conclusively shows the finality. Earlier, I pointed out that there has to be a useful analytical model to think about, well, was Judge Motz in his short order saying, your motion is granted, and Mr. Schmidt's only asking for one remedy, immediate release. Was that, in fact, Judge Motz's intent to grant that as a remedy, immediate release? You have to look at the underlying error tainting the conviction. Was it the manner of prosecution that tainted the conviction? Was there some defect in the fairness of the proceedings, like biased witnesses, juror misconduct, trial counsel's failure to present exculpatory evidence, some kind of defect of that nature? That would lead to three hidden remedies, such as new trial to restart the process, correction of the sentence, or a resentencing hearing. But when the fact of prosecution, the very fact of it, is the error, like double jeopardy or actual innocence, that the conduct just is not a crime against the United States, there is only one remedy for that, and that is immediate release. The government's own conduct in the District of Maryland shows that they thought this was final. When they moved to reconsider, they moved to reconsider under Rule 59E, a motion to amend a final judgment. They moved for a stay. It wasn't granted until at least May 31st, but they moved for a stay on April 19th after they filed a notice of appeal, and they moved for that stay under Rule 62 of a final judgment. Their notice of appeal in no way suggested that they were seeking an interlocutory appeal or appeal of some kind of non-final order. In fact, the Andrews case stands for the proposition that in habeas or 2255 litigation, you cannot have interlocutory appeals. I mean, that was the whole point of the case. The government in Andrews tried to appeal an order for a resentencing before the resentencing even took place, and the Supreme Court says we're just not going to tolerate piecemeal litigation in habeas cases or 2255 cases. So the government's own notice of appeal showed that they knew it was final. The government never started arguing that finality had not taken root until I filed on behalf of Mr. Schmidt in May of this year a motion to dismiss the case for lack of jurisdiction. That is the only time arguments started to surface that Judge Motz's motion was somehow not final. And most importantly, you know, Comstock said the government has to be a responsible custodian of its prisoners, and that's the essence of jurisdiction. Well, a responsible custodian simply cannot fault a detainee for not begging for his release. In fact, the government, in that immediate aftermath of Judge Motz's order, they didn't seek clarification for whether they were actually obligated to release him and comply with the issuance of the writ. They just moved to reconsider, but they didn't move to stay, and that deprived the court in the Eastern District of jurisdiction to commit him. As we stand here today, my client languishes in prison now for over a year without a valid conviction. That's not supposed to happen in the United States. We ask that the district court be affirmed. Thank you. I'd like to begin, I think, with a question Judge Wilkinson asked about whether this case should be held for the 2255 proceeding. And I think the government's answer to that is no. And the reason is that the question before this court is whether there was lawful custody when the certification took place. I think for a practical reason it's also no because, as this court is aware, Mr. Schmidt is due to be released in January. And so assuming that you reverse Judge Boyle and there is a hearing, it would be best if that could happen rapidly before that. In a nutshell, why do you think there was lawful custody here? You talked about the procedural tangles and everything, but just boil it down to its essence and tell me why you think there was lawful custody here. So the essence of our argument, Your Honor, is that Mr. Schmidt was committed under 3621 upon his conviction, that Judge Motz's September order did not require his release, and so there has never been a court order that has required the Bureau of Prisons to release him, and therefore the Bureau of Prisons had lawful custody. You're hinging it on the fact that the order did not require a release. That's right. And so our position is not that if the order had required a release, it would not. So there was no need to move for a stay? Yes, that's right, Your Honor. And once there was a need to move for a stay, the government did move for a stay, and it was interred. I don't understand that because if he's written an opinion that says a person is factually innocent and has granted a motion which asks for a vacation of the conviction and immediate release, and the discharge is the only thing that seems to fit that situation, and if a district court is going to give the government a lot of these orders that grant habeas corpus, they will say you have 60 days to retry the defendant or something like that. I mean, that's the standard. That's correct. And here, simply as a protective measure, when you didn't get that kind of language and you knew what the motion said and you knew what the opinion said, just as a protective measure and just normal prudence, why wouldn't you have applied for the stay? You applied for reconsideration. That's right. That's not the same thing. I'm not blaming you personally because obviously you're not responsible for all this, but why wouldn't the government have applied for a stay simply as a protective measure, given all the circumstantial evidence, which is quite palpable? You know, as a practical matter, I don't know the answer to that question because obviously it wasn't me. I think it, in retrospect, might have been a good idea, but the reason was that the reading of the order, the attorney who read the order did not think from the language of the order, which gave them 30 days to notify whether the prosecution would proceed, that that required release. Well, you know, but as Judge Gregory mentioned earlier in this argument, it looks a little bit like you're trying to get us to bail you out. Well, I don't think that's right, Your Honor. I mean, I think, again, to emphasize that Judge Motz did eventually order the release be stayed, as he has the authority to do, and I think Smith's position here is somewhat sweeping. I think he would say that even where there has been that stay under the Hilton v. Bronskill factors, that there wasn't lawful custody, but that can't be right. I mean, we know from the Supreme Court that under Hilton v. Bronskill, the district court has the authority to order the prison to continue to detain the prisoner pending appeal, and that's precisely what scenario we find ourselves in now, which is that Judge Motz has entered that stay, and the appeal is proceeding before this court in December. How did Judge Motz have authority to enter a stay? There was no lawful incarceration or any kind of conviction. How could the court stay? Well, that's Hilton v. Bronskill, Your Honor, which was from a state court, but it was a full grant of habeas, and the Supreme Court upheld the district court's authority to stay pending appeal based on a weighing of the factors, which was, you know, dangerous. But you can't take advantage of the appeal time. It's just a stay to hold in place, but you go back to the point still of whether or not there was jurisdiction. Otherwise, we'd grant a stay, too, here, but you couldn't bootstrap that. Oh, now we have a stay, so now he's in lawful custody, so now we can certify him. Well, he has to be. I mean, he is in lawful custody. He'd be punished by your mere appeal. If he were in lawful custody, I think he could move today for immediate release, and he can't do that because a stay has been entered by a court. And so it's our position that that is lawful custody. The Bureau of Prisons is under no court obligation to release him and has no sui sponte duty to do that. Either way, under your theory, so just by appealing, say, oh, we've got a stay now, let's go recertify him now. For example, while we're waiting to decide this case, under your theory, you could say, well, there's a stay, let's certify him now. We don't think we need to do that. No, but you said you could, under your theory. No, not under my theory. I was reading the court as maybe thinking there was a problem in the interim. You take that position, you could use our stay now to bootstrap and certify him now. Not your stay, Judge Motz's stay. Why not our stay? It makes him lawfully there now, doesn't it? If he had been ordered released and you had stayed, then he would be lawfully in custody, that's correct. He's an innocent. You know, it's only because this person, I mean, it's the 800-pound gorilla in the room. We're only here because the person is involved in something that we find despicable. But if it was an innocent person in terms of, you mean tell me let somebody just find the rent is granted, and then you say he's sitting around and nobody's changed, he didn't do a thing in a period of time? You say, my goodness, that would be the whole idea of what our framers talked about, our government not being able to. You're talking about a trial of inquisition. That would be worse. You find an actual innocent, not technicality, but factually so. He doesn't dispute that he did what he did. He says it wasn't a violation of United States law. That's correct. Right. The facts don't suggest jurisdiction, right? It's the power of the court to convict him. The power of the court convicted him. He was in lawful custody. Bureau of Prisons has never been ordered to release him, so he's still in the lawful custody of the United States. So you have a Simon Says argument. It said do this, but it didn't say Simon Says. The order clearly said there was no basis for holding him. It never was a stay before the certification. We disagree with that reading of the order. We don't think the order required him to be released. And ultimately, I think Judge Motz agrees with that reading and stays his release. Your position is as long as the judge didn't say Simon Says or whatever he needed to say, whatever that talismanic language you required, he could languish in jail for 30 years. Well, he would have lots of options, Your Honor, if Judge Motz had not acted. He could have sought mandamus, for example. But Judge Motz did act, and Judge Motz did order his release and then immediately stay that in June. And so I think that that is lawful custody under the government's understanding of the Adam Walsh Act. And so we would submit, we would ask this court to reverse the district court's dismissal of the certification and direct the district court to proceed with the evidentiary hearing under the act. All right. Thank you. Mr. Tarleton, I note that you are caught upon it, and I just want to thank you on behalf of the court for your services. We couldn't do our job without services like you and other attorneys who help us in that regard, and we appreciate it very much. Ms. Wright, likewise, we thank you for your ability to represent the United States. With that, we'll ask the district clerk to adjourn the court, signee die, and we'll come down to Greek Council. This honorable court stands adjourned, signee die. God save the United States and this honorable court.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Albert Diaz